FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 17, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

ALLISON S.,

               Plaintiff,

    vs.

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.

No. 4:17-cv-05171-MKD

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

ECF Nos. 15, 16

    BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 15, 16. The parties consented to proceed before a magistrate judge. ECF No. 3. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's Motion, ECF No. 15, and denies Defendant's Motion, ECF No. 16.

ORDER - 1

# JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ORDER - 2

ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial

ORDER - 3

gainful activity," the Commissioner must find that the claimant is not disabled.  20
C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis
proceeds to step two.  At this step, the Commissioner considers the severity of the
claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from
"any impairment or combination of impairments which significantly limits [his or
her] physical or mental ability to do basic work activities," the analysis proceeds to
step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy
this severity threshold, however, the Commissioner must find that the claimant is
not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to
severe impairments recognized by the Commissioner to be so severe as to preclude
a person from engaging in substantial gainful activity.  20 C.F.R. §
416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the
enumerated impairments, the Commissioner must find the claimant disabled and
award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the
severity of the enumerated impairments, the Commissioner must pause to assess
the claimant's "residual functional capacity."  Residual functional capacity (RFC),
defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On January 28, 2013, Plaintiff filed an application for Title XVI supplemental security income benefits. Tr. 222-30. On February 5, 2013, Plaintiff protectively filed an application for child's insurance benefits based on disability. Tr. 220-22. Both applications alleged an onset date of April 1, 2010. Tr. 220, 222. The applications were denied initially, Tr. 158-64, and on reconsideration, Tr. 170-73. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on August 26, 2015. Tr. 42-99. On July 18, 2016, the ALJ denied Plaintiff's claim. Tr. 20-32.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2010. Tr. 22. At step two, the ALJ found Plaintiff had the following severe impairments: autism spectrum disorder, generalized anxiety disorder, attention deficit hyperactivity disorder, borderline intellectual functioning, and rule out bipolar disorder. *Id.* At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 22-23. The ALJ then

concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> [S]he can perform simple, repetitive work. [Plaintiff] should not interact with the public and can have superficial interaction with coworkers and supervisors. [Plaintiff] should work in proximity to or with no more than one or two people.

Tr. 25.

At step four, the ALJ found Plaintiff had no past relevant work. Tr. 30. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as bottle labeler, sandwich board carrier, garbage collector, housekeeper cleaner, and laundry worker. Tr. 31. The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from April 1, 2010, through July 18, 2016, the date of the ALJ's decision. Tr. 32.

On September 13, 2017, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her child disability benefits under Title II and supplemental security income

ORDER - 7

benefits under Title XVI of the Social Security Act.  ECF No. 15.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed the medical opinion evidence;

2. Whether the ALJ properly weighed the lay opinion evidence;

3. Whether the ALJ properly evaluated the listed impairments at step three; and

4. Whether the ALJ properly found at step five that Plaintiff could perform other work in the national economy.

ECF No. 15 at 10.

## DISCUSSION

**A. Medical Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of the medical opinion of Lynn Orr, Ph.D.  ECF No. 15 at 11-14.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a

reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830-831 (9th Cir. 1995)).

Dr. Orr examined Plaintiff on April 19, 2016, and opined that Plaintiff had mild limitations in her ability to understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related decisions; that Plaintiff had moderate limitations in her ability to interact appropriately with supervisors; that Plaintiff had marked limitations in her ability

to understand complex instructions, carry out complex instructions, make judgments on complex work-related decisions, interact appropriately with the public, interact appropriately with co-workers, and respond appropriately to usual work situations and to changes in routine work setting; and that Plaintiff's emotional vulnerability would cause significant difficulty in being consistent in carrying out tasks in a work-like setting. Tr. 575-84. The ALJ gave this opinion limited weight. Tr. 29. Because Dr. Orr's opinion was contradicted by Dr. Postovoit, Tr. 111-13, and Dr. Comrie, Tr. 140-42, the ALJ was required to provide specific and legitimate reasons for rejecting the opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Orr's opinion was inconsistent with Plaintiff's "graduation from high school in June 2010 and subsequent success in college." Tr. 29. An ALJ may consider good academic performance as evidence that is inconsistent with a medical source's opined limitations. *See Anderson v. Astrue*, No. 09-CV-220-JPH, 2010 WL 2854241, at *6 (E.D. Wash. July 19, 2010). The specific and legitimate reason standard can be met by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, [the ALJ] stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). However, an ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his

ORDER - 10

findings. *See, e.g., Holohan*, 246 F.3d at 1207-08 (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).

Here, the ALJ noted that, during the relevant period, Plaintiff graduated from high school, attended community college, had a 3.5 GPA in community college, and was 30 credits away from completing her AA. Tr. 23, 27. However, the ALJ's conclusion that this academic success was inconsistent with Dr. Orr's opined limitations is not supported by the overall evidence. Although Plaintiff was able to graduate from high school, she was on an individualized education plan (IEP) that featured a special education placement for math and additional help and accommodations in her mainstream classes. Tr. 85, 552. Plaintiff's general education teachers and special education teachers provided accommodations in the form of extra time on tests, extra time on assignments, seating close to the board, and reminders on short-term and long-term projects. Tr. 553-54. Plaintiff enrolled in community college in the fall of 2010. Tr. 50. Plaintiff only enrolled in one to two courses at a time and was often overwhelmed by that workload. Tr. 76, 88-90, 360, 393, 405. Plaintiff spent two years completing remedial coursework. Tr. 413. At the time of the hearing in August 2015, Plaintiff was still 30 credits away from completing her AA degree. Tr. 59. Plaintiff continued to receive accommodations in community college in the form of a 504 plan. Tr. 568. Plaintiff's mother maintains contact with Plaintiff's counselors at the college. Tr. 90. Plaintiff

attempted to complete some coursework online but withdrew from her online courses because she lacked the self-discipline to complete the required work. Tr. 361. Plaintiff's mother testified that Plaintiff's academic successes were attributable to "constant reminders" to complete her work. Tr. 89-90. Plaintiff experienced anxiety attacks at school and requested increased medication because she was not able to cope with the environment. Tr. 90. When the full scope of Plaintiff's academic progress and history of accommodations is considered, Plaintiff's academic performance is consistent with the limitations Dr. Orr opined. Accordingly, the ALJ's conclusion is not supported by substantial evidence.

Second, the ALJ found Dr. Orr's opinion was inconsistent with evidence of Plaintiff's relationships with friends and family and behavior around others. Tr. 29. An ALJ may reject limitations "unsupported by the record as a whole." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003). However, an ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. *See, e.g., Holohan*, 246 F.3d at 1207-08 (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).

Here, the ALJ's characterization of Plaintiff's social functioning is not supported by substantial evidence. For example, the ALJ found that Dr. Orr's opined limitations were inconsistent with Plaintiff's report to Dr. Shadrach that

ORDER - 12

Plaintiff had friends and had good relationships with family.  Tr. 29 (citing Tr.

384).  However, the record shows that Plaintiff struggled in her relationships with

others.  Plaintiff's mother testified that Plaintiff's meltdowns have been directed at

family members and that Plaintiff's mother often bears the brunt of Plaintiff's

verbal and physical attacks.  Tr. 80-81.  Plaintiff's mother also testified that these

"meltdowns" occurred at school and with Plaintiff's friends.  Tr. 88.  Plaintiff

testified that she has one to two friends, whom she sees once or twice a week.  Tr.

70-71.  Plaintiff testified that she has trouble interacting with friends and family

due to talkativeness and impulsivity.  Tr. 75.  Plaintiff reported difficulty in

interacting with peers to several medical providers.  *See, e.g.,* Tr. 379, 413, 575.

Additionally, although the ALJ concluded that Plaintiff interacted appropriately

with treatment providers, the medical evidence repeatedly documented

inappropriate behavior.  Tr. 29; *see* Tr. 379 (Dr. Shadrach: "[Plaintiff] was

cooperative, but extremely impassive throughout the interview.  She was abrupt

[to] the point of being rude."); Tr. 416 (Dr. Charboneau: "[Plaintiff] was observed

to interrupt others, had rapid speech, talked almost continually and required

redirection often.  Her comments were excessive and tangential, and at times she

became impatient when redirected."); Tr. 578 (Dr. Orr: "[Plaintiff] appeared

somewhat distant and socially disconnected.  Eye contact was limited.  She was

nervous throughout interview and testing.").  Furthermore, while the ALJ

ORDER - 13

concluded that Plaintiff was not alleged to have behaved inappropriately with students or instructors in college and that Plaintiff was not receiving special education assistance in high school for behavioral issues, Plaintiff's mother testified that Plaintiff's meltdowns had occurred at the college.  Tr. 29; *see* Tr. 88. The Court also notes that Plaintiff did receive behavior support in school, although this service predated Plaintiff's alleged onset date.  Tr. 534.  The record as a whole indicates that Dr. Orr's opined limitations are consistent with Plaintiff's actual social functioning.  Therefore, the ALJ's stated reason for discrediting Dr. Orr's opinion is not supported by substantial evidence.  The ALJ erred in rejecting Dr. Orr's opinion.

**B. Lay Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of lay opinion evidence from Plaintiff's mother, Dena England.  ECF No. 15 at 16-18.

An ALJ must consider the statement of lay witnesses in determining whether a claimant is disabled.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).  Lay witness evidence cannot establish the existence of medically determinable impairments, but lay witness evidence is "competent evidence" as to "how an impairment affects [a claimant's] ability to work."  *Id.*; 20 C.F.R. § 416.913; *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms

and daily activities are competent to testify as to her condition."). If a lay witness statement is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919).

Mrs. England submitted a function report and testified at the hearing that Plaintiff needed constant reminders to finish household chores and personal hygiene tasks; that Plaintiff had "meltdowns" in public that involved profanity, screaming, and crying; that Plaintiff had difficulty expressing her thoughts; that Plaintiff experienced anxiety when speaking to others; that Plaintiff could not manage her own finances and did not understand the concept of money; that Plaintiff was on an IEP in high school and received additional help and accommodations in her mainstream classrooms; that Plaintiff was intelligent but had difficulty applying what she learned; that Plaintiff participated in Department of Vocational Rehabilitation (DVR) work at Target which lasted only two days; that Plaintiff was highly dependent on Mrs. England and would have to be highly medicated if Mrs. England left Plaintiff for any length of time; that Plaintiff took Klonopin to deal with extreme anxiety if Mrs. England was not immediately available to Plaintiff; that Plaintiff would experience anxiety even if working alone; that Plaintiff somewhat successful academically but had numerous breakdowns even when taking only one class; and that Plaintiff would have anxiety

attacks and would come home crying.  Tr. 30; *see* Tr. 77-91, 288-95.  The ALJ

gave Mrs. England's testimony limited weight.  Tr. 30.  The ALJ was required to

give germane reasons to discredit this testimony.  *Nguyen*, 100 F.3d at 1467.

The ALJ found Mrs. England's testimony was inconsistent with Plaintiff's

academic performance and history of working part-time at Ross for three months.

Tr. 30.  An ALJ may reject a lay witness' testimony for being inconsistent with a

claimant's activities.  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155,

1163-64 (9th Cir. 2008); *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).  Here,

the ALJ's conclusion is not supported by substantial evidence.

As discussed *supra*, the ALJ's characterization of Plaintiff's academic

success relies on a selective reading of the record.  Although Plaintiff did not

receive behavior support in high school, she received substantial other

accommodations, including a special education placement for math and additional

help and accommodations in her mainstream classes.  Tr. 85, 552-54.  Plaintiff

continued to receive accommodations in community college through a 504 plan.

Tr. 568.  Plaintiff only enrolled in one to two classes at a time, and this course load

was often overwhelming.  Tr. 76, 88-90.  At the time of the hearing, Plaintiff had

enrolled in community college five years prior and was still 30 credits away from

completing her AA degree.  Tr. 50, 59.  Plaintiff spent two years completing

remedial course work.  Tr. 413.  Plaintiff's mother testified that Plaintiff's

ORDER - 16

academic successes were attributable to "constant reminders" to complete her work. Tr. 89-90. This record is consistent with the limitations Mrs. England described.

The ALJ's consideration of Plaintiff's work history is similarly selective. The ALJ discredited Mrs. England's testimony based on Plaintiff's ability to work a part-time job at Ross, which she held for three months and which ended because it was a temporary position and not because of Plaintiff's disabilities.[1] Tr. 26, 30. Stopping work for reasons other than disability can be inconsistent with a later claim for disability. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). However, to be found capable of substantial gainful activity as defined in the Social Security Act, a claimant must have "more than merely the ability to find a job and physically perform it; it also requires the ability to hold the job for a significant period of time." *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 694 (9th Cir. 1999). Even if Plaintiff was able to successfully hold this job for its full seasonal term and left for a reason other than disability, this job stands out as an outlier in the record of Plaintiff's full employment history. Plaintiff was let go from Best Buy after three months because she had overages and shortages at her

_____

[1] The Court notes that Plaintiff only worked at Ross for 15-20 hours per week and that this work predates Plaintiff's alleged onset date. Tr. 61, 232-33.

till. Tr. 62, 577. Plaintiff worked as a dishwasher at Kennewick School District for half an hour per day during the school week for three years while in high school, but she was let go from the position for using inappropriate language with a coworker. Tr. 63-65, 83. Plaintiff attempted to sell Cutco knives door-to-door but quit because it was not a good fit. Tr. 63-64. Plaintiff was terminated from a job at Arby's because she did not perform tasks as instructed and for using inappropriate language. Tr. 64, 294. Plaintiff worked at Walmart for four hours and left because she did not understand the job after orientation. Tr. 577. DVR placed Plaintiff in a position at Target but terminated the placement after two days. Tr. 87. DVR indicated it did not have other placements to offer to Plaintiff. *Id.* Although Plaintiff may have been able to hold the cashier position at Ross for three months without incident, Plaintiff's longitudinal employment history reflects limitations consistent with the functional limitations Mrs. England opined. The ALJ's finding of inconsistency with Mrs. England's testimony based on the identification of one job is not supported by substantial evidence. The ALJ erred in rejecting Mrs. England's testimony.

**C. Remedy**

Plaintiff urges this Court to remand this case for an immediate award of benefits. ECF No. 15 at 20. "The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court."

ORDER - 18

*Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).  When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met.  *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (citations omitted).  Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits.  *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).  Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled."  *Garrison*, 759 F.3d at 1021.  Here, the Court finds

ORDER - 19

that each of the credit-as-true factors is satisfied and that remand for the calculation and award of benefits is warranted.

### 1. Completeness of the Record

As to the first element, administrative proceedings are generally useful where the record "has [not] been fully developed," *Garrison*, 759 F.3d at 1020, there is a need to resolve conflicts and ambiguities, *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995), or the "presentation of further evidence ... may well prove enlightening" in light of the passage of time, *I.N.S. v Ventura*, 537 U.S. 12, 18 (2002). *Cf. Nguyen*, 100 F.3d at 1466–67 (remanding for ALJ to apply correct legal standard, to hear any additional evidence, and resolve any remaining conflicts); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (same); *Dodrill*, 12 F.3d at 918, 919 (9th Cir. 1993) (same); *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (en banc) (same).

Here, the record is sufficiently developed. It contains nearly 600 pages of significant evidence dating to Plaintiff's high school IEP, lay witnesses, and medical evidence from multiple treating providers and two consultative examinations. The record contains function reports and ample testimony from Plaintiff and her mother, as well as the testimony of a vocational expert.

Defendant contends further proceedings are necessary because Defendant asserts Plaintiff's work and academic history are inconsistent with the limitations

opined by Dr. Orr and Mrs. England, thus creating conflicts and ambiguities to be resolved on remand.  ECF No. 16 at 12-13.  However, as discussed *supra*, the evidence as a whole is consistent with the limitations opined by Dr. Orr and Mrs. England.  Plaintiff's academic success has been achieved through substantial accommodations and despite inappropriate social behaviors.  Plaintiff's ability to hold a part-time job for three months, during a period prior to her alleged onset date, is not inconsistent with Dr. Orr's opined limitations when considered in light of Plaintiff's longitudinal employment history.

Contrary to Defendant's contention, Plaintiff's work and academic history do not present a factual conflict creating serious doubt that Plaintiff is disabled warranting remand.  *See Treichler*, 775 F.3d at 1101, 1107.  The Court concludes the record is fully developed and further administrative proceedings would serve no useful purpose.  The first prong of the credit-as-true rule is met.

### 2. ALJ Error

As discussed *supra*, the ALJ failed to provide legally sufficient reasons, supported by substantial evidence, for rejecting the opinions of Dr. Orr and Mrs. England.  Therefore, the second prong of the credit-as-true rule is met.

### 3. Crediting as True Demonstrates Disability

The third prong of the credit-as-true rule is satisfied because if the opinions of Dr. Orr and Mrs. England were credited as true, the ALJ would be required to

find Plaintiff disabled. Dr. Orr opined that Plaintiff's emotional vulnerability would cause significant difficulty in being consistent in carrying out tasks in a work-like setting. Tr. 575-84. The vocational expert testified that an individual could be off task no more than 10% of the time and still maintain employment. Tr. 95. Furthermore, Mrs. England testified that Plaintiff needs constant reminders to finish tasks, Tr. 79, and that Plaintiff has behavioral outbursts, Tr. 80-81. The vocational expert testified that an individual requiring frequent reminders to do their task, outside of an initial training period, would not be able to sustain competitive employment, and that behavioral outbursts on the job would not be tolerated by employers. Tr. 95-96. Had the ALJ credited Dr. Orr and Mrs. England, the ALJ would be compelled to find Plaintiff disabled.[2]

### 4. Serious Doubt

Finally, the record as a whole does not leave serious doubt as to whether Plaintiff is disabled. *Garrison*, 759 F.3d at 1021. Plaintiff's impairments and their serious effects on her functionality over the course of years are documented in the academic, medical, and lay witness evidence of record. Although Plaintiff has had

---

[2] Because of this finding, the Court declines to address Plaintiff's argument that the ALJ erred in failing to find Plaintiff was disabled because she met or medically equaled a listed impairment. ECF No. 15 at 14-16.

ORDER - 22

some successes at school and in work settings, they have occurred in a highly accommodated setting and for periods of time far less demanding than significant periods of full-time work. Moreover, the credit-as-true rule is a "prophylactic measure" designed to motivate the Commissioner to ensure that the record will be carefully assessed and to justify "equitable concerns" about the length of time which has elapsed since a claimant has filed their application. *Treichler*, 775 F.3d at 1100 (internal citations omitted). In *Vasquez*, the Ninth Circuit exercised its discretion and applied the "credit as true" doctrine because of Claimant's advanced age and "severe delay" of seven years in her application. *Vasquez v. Astrue*, 572 F.3d 586, 593-94 (9th Cir. 2009). Here, the delay of nearly six years from the date of the application make it appropriate for this Court to use its discretion and apply the "credit as true" doctrine pursuant to Ninth Circuit precedent.

The Court therefore reverses and remands to the ALJ for the calculation and award of benefits.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 15, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, ECF No. 16, is **DENIED**.

ORDER - 23

3. The Court enter **JUDGMENT in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for immediate calculation and award of benefits**.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED December 17, 2018.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 24